**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

LORI MACNAUGHTON, *individually and on behalf of all others similarly situated*,

     Plaintiff,

 v.

YOUNG LIVING ESSENTIAL OILS, LC,

     Defendant.

Case No. 5:21-cv-00071-BKS-ML

**FIRST AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

**CLASS ACTION COMPLAINT**

  Plaintiff, Lori MacNaughton, individually and on behalf of all other similarly situated persons, by her undersigned attorneys, brings this First Amended Class Action Complaint against Defendant, Young Living Essential Oils, LC, ("Young Living" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

**NATURE OF THE ACTION**

  1.  This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased essential oil products labeled as "therapeutic" from Defendant (hereinafter the "Products").[1]

  2.  Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on its label, the Products, falsely guarantee to be "therapeutic" and provide

---

[1] A complete listing of the Products can be found here: https://www.youngliving.com/en_US/products/c/essential-oil-products (last accessed December 2, 2020).

a number of health-related benefits, when in reality the Products provide no scientifically proven healthy or medicinal benefit and may actually be harmful[2].

3.      As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been, and continue to be, harmed by purchasing the Product under false pretenses and paying more for it than they otherwise would have, if they would have purchased it at all.

4.      Defendants' uniform acts and omissions in connection with the marketing, sale and delivery of the Products violate the consumer protection laws of the states of residence of Plaintiff and Members of the Classes, breaches Defendants' express and implied warranties to Plaintiff and Members of the Classes, and in the alternative, unjustly enriched the Defendants to the detriment of Plaintiff and the Members of the Classes.

5.      Plaintiff and Members of the Classes  seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

6.      Plaintiff, MacNaughton, is a citizen of the State of New York residing in the city of Syracuse and is a member of the Classes defined herein.  She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently on or around February of 2020.  Plaintiff MacNaughton and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint.  Plaintiff MacNaughton and members of the Classes would not have purchased the Products had they been accurately marketed and labeled.

---

[2]      https://www.sciencealert.com/essential-oil-poisoning-is-on-the-rise-this-is-the-science-you-need-to-know (last accessed March 18, 2021)

7.      Defendant, Young Living, is a Utah limited liability company with its principal place of business in Lehi, Utah.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

9.      The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

10.      Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

### *Young Level's Business Model*

11.      Young Living is a company that purports to sell "essential oils" and other related products.  The company reported annual sales of more than $1 billion from 2015 and 2017.

12.      It was founded by Gary D. Young, a controversial figure who died in early 2018. Mr. Young's controversial moments include: (a) being prosecuted for practicing medicine without a license on multiple occasions; (b) running a now shuttered "Young Living Research Clinic" in Springville, Utah, (subsequently replaced by a Young Living clinic in Ecuador) where he

employed a physician convicted of manslaughter; and (c) allegations he nearly killed a patient through vitamin C infusions which caused renal failure.[3]

13.     Young Living markets its products, including the Products, through its website and other e-commerce channels.  Young Living directs and controls all significant aspects of the sale of its well-known products, including the manufacturing, marketing, packaging, distribution, and pricing.  The Products are sold throughout the United States and on consumer retail websites.

14.     In addition, Young Living markets its products, including the Products, by recruiting thousands of independent distributors who can sell directly to customers and earn commissions on sales to distributors recruited into a hierarchical network called 'downlines'. Young Living refers to this as a multi-level marketing company.

15.     In 2017, the *New Yorker* reported that distributors are required by Young Living to make $100 of purchases per month to qualify for a commission.

16.     According to a public income statement, in 2016 approximately 94% of Young Living's active members made less than a dollar, while less than one tenth of one percent (about one thousand Royal Crown Diamond distributors) made over a million dollars.

17.     In April 2019, a nationwide class-action lawsuit was launched under the RICO Act against Young Living unrelated to the practices at issue in this complaint.  *See Julie O'Shaughnessy v. Young Living Essential Oils, LC*, Case No. 1:19-cv-412, Doc. 1. (W.D. Tex.).

---

[3] *See* Rachel Monroe, How Essential Oils Became the Cure for Our Age of Anxiety, THE NEW YORKER, October 9, 2018. Mr. Young was also the subject of an investigative report in which workers at his Tijuana based "medical clinic" represented to an undercover investigative reporter from the Los Angeles Times (who had provided the clinic with a blood sample) that he had "aggressive cancer and liver dysfunction" which required immediate, expensive therapy at the clinic. When the clinic workers were confronted with the fact the blood sample was provided by a healthy tabby cat named "Boomer," they responded the cat likely had leukemia. According to Ms. Moore's article, Boomer is alive and well, despite Young Living's gloomy diagnosis.

The complaint described Defendant's business operations as "an unlawful pyramid scheme created under the guise of selling essential oils for quasi-medicinal purposes.  In truth, Young Living is nothing more than a cult-like organization falsely peddling the ever-elusive promise of financial success and an alternative lifestyle."  *Id*.

### *Young Living Falsely Markets its Essential Oils as Conferring Beneficial Health Effects*

18.     Young Living sells a variety of essential oils and essential oil blends to consumers. Consumers pay a premium for the Products when compared to other similar products.   For instance:

    a.   Young Living charges consumers $33.22 for a 15 ml bottle of lavender essential oil, while Walmart sells a 15 ml bottle of lavender essential oil for $4.98[4]

    b.   Young Living charges consumers $103.29 for a 15 ml bottle of frankincense essential oil, while Amazon charges $21.50 for a 15 ml bottle of frankincense essential oil.[5]

    c.   Young Living charges consumers $52.63 for a 5 ml bottle of valerian essential oil, while Eden's Garden charges $16.95 for a 5 ml bottle of valerian oil.[6]

---

[4]*See*        https://www.youngliving.com/en_us/products/lavender-essential-oil   *compared   to* https://www.walmart.com/ip/HoMedics-Lavender-Essential-Oil-Calming-Soothing-and-Relaxing-15-ml/613936499 (last visited March 17, 2020)

[5]   *See*   https://www.youngliving.com/en_us/products/frankincense-essential-oil   *compared   to* https://www.amazon.com/Aura-Cacia-Essential-Meditative-Frankincense/dp/B002Q4UCE2 (last visited March 17, 2020)

[6]   *See*   https://www.youngliving.com/en_us/products/valerian-essential-oil   *compared   to* https://www.edensgarden.com/products/valerian (last visited March 17, 2020)

      d.  Young Living charges consumers $30.26 for peppermint essential oil, while Target charges $6.50.[7]

19.    As shown in the image below, Young Living prominently labels each of the Products as being "100% Pure, Therapeutic-Grade":



20.    To support its claims that the Products are "therapeutic," Young Living makes a number of specific claims that the Products confer a physical, mental, or medicinal benefit.

21.    This includes claims that the Products:

---

[7] *See*  https://www.youngliving.com/en_us/products/peppermint-essential-oil  *compare to* https://www.target.com/p/olivia-care-100-pure-peppermint-essential-oil-15ml/-/A-51244036

- Will calm or relax consumers when applied or diffused, such as: Dragon Time "can help promote feelings of stability and calm during occasional times of moodiness"[8] and Lavender can "ease your occasional nervous tension"[9];

- Will help relieve consumers' feelings of anxiety when applied (or diffused), such as: Bergamot Oil "[m]ay help relieve tension during times of occasional stress"[10];

- Will help consumers sleep, such as Sleepylze "promotes feelings of relaxation and tranquility for restful sleep … and a peaceful send-off to dreamland"[11] and Freedom which "may help with occasional sleeplessness or restlessness."[12];

- Will help consumers breathe, such as RC oil which "creates the feeling of normal clear breathing and a refreshing respiratory experience"[13];

- Will bring users clarity, focus, or alertness when applied (or diffused) as directed, such as: "Brain Power is a blend of essential oils . . . to promote a sense of clarity and focus when used aromatically"[14];

---

[8] https://www.youngliving.com/en_US/products/dragon-time-essential-oil-blend#:~:text=Dragon%20Time%E2%84%A2%20is%20a,during%20occasional%20times%20of%20moodiness (last visited August 19, 2020).

[9] https://www.youngliving.com/blog/lavender-essential-oil-uses-and-benefits/ (last visited March 17, 2021).

[10] https://www.youngliving.com/en_US/products/bergamot-essential-oil (last visited August 19, 2020).

[11] https://www.youngliving.com/en_us/products/kidscents-sleepyize-5ml (last visited March 17, 2021)

[12] https://www.youngliving.com/en_us/products/freedom-5ml (last visited March 17, 2021)

[13] https://www.youngliving.com/en_us/products/rc-essential-oil-blend (last visited March 17, 2021)

[14] https://www.youngliving.com/en_US/products/brain-power-essential-oil-blend#:~:text=Brain%20Power%E2%84%A2%20is%20a,and%20focus%20when%20used%20aromatically (last visited August 19, 2020).

- Can be used to treat symptoms associated with depression, such as: Davana oil "boosts your positive outlook on life"[15] and One Heart "encourages a bright outlook on life"[16];

- "Reduce[] feelings of occasional stress"[17]; and

- Will help consumers increase or maintain their energy levels when applied (or diffused) as directed, such as: Peppermint "helps to maintain energy levels when applied topically."

22.     Young Living had a specific definition of what it means when it identifies one of it oils as being "Young Living Therapeutic Grade."  On Young Living's website, the company's product marketing staff instructs its member-sales people:

> When describing therapeutic-grade essential oils to someone else, it's important to relay that ***every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired effect.[18]***

That same page goes on to say: "The YLTG promise is a bold statement—but you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work."  Although Young Living appears to have removed this reference from its website since January 13, 2021, Defendant has not removed references in its various blogs and other

---

[15]  https://www.youngliving.com/en_US/products/davana-essential-oil (last visited August 19, 2020).

[16]  https://www.youngliving.com/en_us/products/one-heart-5ml (last visited March 17, 2021)

[17]  https://www.youngliving.com/en_US/products/davana-essential-oil (last visited August 19, 2020).

[18]  https://www.youngliving.com/blog/what-is-young-living-therapeutic-grade/ (last visited January 13, 2021) (emphasis in original). After filing this action, Young Living removed this page from its website, a copy of the original is attached as Exhibit A.

websites.  A May 9, 2019 re-post on the D. Gary Young Blog maintained by Young Living[19] entitled "Eight Ways to Find Pure, Therapeutic-Grade Essential Oils" states:

> Pure, therapeutic-grade essential oils can have therapeutic effects on their users.  The purer the oils, the stronger the benefits…Peppermint essential oil should contain between 38 and 47 percent menthol to be therapeutic…Look for a guarantee of therapeutic grade, which Young Living provides.[20]

23.     That blog posting the asks the question: "If an oil is labeled '*pure, therapeutic-grade,*' can I be sure that it is?"  and in the guise of "Gary" the blog answers: "**NO!  Look for a guarantee of therapeutic-grade which Young Living provides."**  The blog posting goes on to describe how Young Living's guarantee of therapeutic-grade oils is superior to all other "therapeutic-grade" promises because Mr. Young "developed Young Living's very high standards for therapeutic-grade essential oils."[21]  This guarantee is what Young Living claims separates the company's products labeled "therapeutic-grade" from its competitors' "therapeutic-grade" products and is one of the major reasons Young Living is able to charge a premium.

24.     Young Living directs these and other representations and warranties about the health-related benefit claims of its Products to consumers, like Plaintiff and the members of the

---

[19] The D. Gary Young blog has the Young Living Essential Oils branding at the bottom, and includes the following at the top: "EDITOR'S NOTE: Since Gary Young's passing, we have been taking stock of the tremendous contributions he made to the world by revisiting his presentations, such as this fascinating blog post series, originally published in 2010, that recounts Gary's ongoing discoveries about pure essential oils, their properties, and their production." https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed March 30, 2021).  A copy of this blog posting is attached as Exhibit B.

[20] https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed March 30, 2021)(Exhibit B)

[21] https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed March 30, 2021) (Exhibit B)

Classes, and Young Living intends that Plaintiff and members of the Classes read and rely on its representations and warranties.

25.     However, contrary to these representations and warranties, the Products actually provide no scientifically proven health-related benefits, leaving Plaintiff and Members of the Classes having paid a premium for a Product or Products that failed to provide the supposedly guaranteed "therapeutic" benefits.

26.     Indeed, in a recent proceeding before the National Advertising Division (NAD), the advertising industry's robust self-regulatory body which offers a vigorous dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy, Young Living was challenged as to the truthfulness and accuracy of its health-related claims about the Products, particularly that they are "therapeutic."[22]

27.     In that proceeding, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

28.     As a result of the proceeding (and subsequent failed appeal), the NAD directed, and Young Living agreed, to permanently discontinue its claim that the Products are "therapeutic.."

29.     In addition, Young Living agreed to permanently discontinue several other therapeutic-related claims about the Products, including that they :

• Promote feelings of calm and relaxation;

• Help consumers sleep;

• Reduce your anxiety;

---

[22]     https://bbbprograms.org/media-center/decisions-details/nad-recommends-that-young-living-essential-oils-discontinue-therapeutic-grade-and-health-related-claims-for-its-essential-oils-advertiser-to-appeal (last visited January 13, 2020).

10

- Provide clarity, focus and/or alertness;

- Energize;

- Improvers consumers' mood and increase their motivation.

30.     Defendant, a billion-dollar company, has the resources to conduct its own testing, but did not.  Defendant had no reasonable basis to believe the truthfulness and accuracy of its health-related claims about the Products;  knew that the health-related claims about the Products were not accurate; and knew that its labeling, advertising and/or marketing was false and misleading to consumers.

31.     On or about November 24, 2020, a panel of the National Advertising Review Board ("NARB"), the appellate advertising law body for the NAD, affirmed the earlier NAD ruling.[23] Like the NAD before it, the NARB ruled that Young Living should discontinue "therapeutic grade" claims for its "essential oils" because it was "unsupported," as well as other unsupported health and wellness benefit claims.

32.     Following the NARB decision, Young Living purportedly stated that it will comply with NARB's decision.   Nevertheless, Young Living's website continues to reference "therapeutic-grade essential oils" in its marketing.[24]  Moreover, bottles of various Young Living products deceptively labeled as "therapeutic-grade essential oils" can still be purchased through

---

[23]     https://bbbprograms.org/media-center/newsroom/narb-therapeutic-grade-essential-oils-claim (last visited January 13, 2020).
[24]     *E.g.,*   https://www.youngliving.com/blog/the-adventure-of-learning-and-using-essential-oils-effectively-part-1/ (last visited March 30, 2021), a copy of this page is attached as Exhibit C; https://www.youngliving.com/blog/what-is-young-living-therapeutic-grade/ (last visited January 13, 2021) (Exhibit A).

numerous third-party vendors.[25]   Young Living's YouTube channel repeatedly shows the Product

with "therapeutic-grade" on the bottles: [26]



27

*Young Living's Marketing and Sale of the Products Violates Federal Law*

---

[25]   https://www.amazon.com/Bergamot-Essential-15ml-Young-Living/dp/B00767ELUA   (last visited   January   13,   2021);   https://www.amazon.com/Brain-Power-Essential-Young-Living/dp/B0016C8QOS   (last visited January 13, 2021);   https://www.amazon.com/Young-Living-Essential-Ravintsara-Therapeutic/dp/B071P2946H   (last visited January 13, 2021); https://www.amazon.com/Frankincense-Essential-Young-Living-Oils/dp/B00194GUZA   (last visited   January   13,   2021;   https://www.amazon.com/PanAway-Essential-Young-Living-Oils/dp/B00CDD4FQW   (last   visited   January   13,   2021);   https://essentialoil-life.com/products/young-living-davana-essential-oil-5ml?variant=29521493983266&utm_medium=cpc&utm_source=google&utm_campaign=Google%20Shopping&gclid=Cj0KCQiA0fr_BRDaARIsAABw4EuDAyQwv0rMGneP41vaK5oaQSeQ9ZCuz22kxtB8qh5TNmU5JVOW_4AaArzpEALw_wcB   (last visited January 13, 2021); https://www.911healthshop.com/products/young-living-dragon-time-essential-oil-15-milliliter?variant=32190621876314&dfw_tracker=86746-32190621876314&gclid=Cj0KCQiA0fr_BRDaARIsAABw4EsEHpVuYTgCvHqsDFwP1oTmthxGdtUeMYftgxle96u6goTfjIxNNTsaAv9zEALw_wcB (last visited January 13, 2021).
[26]https://www.youtube.com/user/youngliving007
[27]     https://youtu.be/kjR4ayrFQWQ     see     also     https://youtu.be/wuqYhWV8KyE     and https://youtu.be/IZtxNX7E3Xg (last accessed March 18, 2021)

33.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

35.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c).

36.     Under these provisions, companies must have a reasonable basis for making objective product claims, including claims that a product can treat specific conditions before those claims are made.[28]

37.     As alleged herein, Young Living has represented the Products confer a healthy or medicinal benefit.

38.     These representations are false or misleading or were not substantiated at the time the representations were made.

39.     Therefore, the making of the representations as set forth in Paragraphs 19-26 of this Complaint constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

40.     Relatedly, Young Living's labeling, advertising, and marketing of the Products violates the Federal Food, Drug, and Cosmetic Act (the "FDCA Act"), 21 U.S.C. § 321(g)(1)(B).

---

[28] See Advertising Substantiation Policy Statement, appended to *Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986) ("Advertising Substantiation Policy Statement").

41.     The Products are promoted for conditions that cause them to be drugs under the Act because, as alleged herein, they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease.

42.     The intended use of a product may be determined by, among other things, its labeling, advertising, and the circumstances surrounding its distribution, 21 C.F.R. § 201.128.

43.     Moreover, the Products are also "new drugs" under section 201(p) of the Act (21 U.S.C. § 321(p)), because they are not generally recognized as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

44.     Under sections 301(d) and 505(a) of the Act (21 U.S.C. §§ 331(d) and 355(a)), a new drug may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved application is in effect for the drug.

45.     FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

46.     As alleged herein, and as found by the NAD and NARB, Young Living has no competent and reliable scientific evidence to support its health-related claims about the Products , to the contrary, Young Living knew or should have known multiple scientific studies contradict Young Living's health-related claims.

47.     On information and belief, there is no FDA-approved application in effect for the Products.

48.     Because there is no FDA-approved application in effect for the Products, Defendant's labeling, advertising, marketing, and sale of the Products violates the FDCA Act.

### *Young Living Has Previously Falsely Marketed its Essential*
### *Oils as Conferring Beneficial Health Effects*

49.     This is not the first time Young Living has been admonished for falsely marketing its essential oils products.

50.     In September of 2014, the FDA issued a warning letter to Young Living because it promoted its essential oils for conditions such as, but not limited to, viral infections (including Ebola), Parkinson's disease, autism, diabetes, hypertension, cancer, insomnia, heart disease, post-traumatic stress disorder (PTSD), dementia, and multiple sclerosis, that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners.[29]

### *Young Living Continues to Knowingly Market the Products Falsely and Misleadingly*

51.     Through at least March 18, 2021, Defendant continues to knowingly use the false and misleading information to  label, market, and advertise, and/or sell the Products to the general public as conferring a healthy or medicinal benefit, including that they are "therapeutic."  The only conceivable purpose for falsely and deceptively making these claims about the Products is to stimulate sales and enhance Defendant's profits.

52.     Despite this claim, at the NAD hearing Young Living did not produce a single scientific study on its own essential oils and the NAD found, "in the absence of specific product testing (or evidence that Young Living's essential oils have not only the same ingredient, but that such ingredients appear in the products in the same dosage and formulation and that the route of administration is the same as the underlying tests reasonably permitting extrapolation of results from the studies to the claims made), NAD concluded that …claims its essential oils are "therapeutic grade" and confer promised physical and mental benefits are unsubstantiated."

---

[29] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/young-living-09222014 (last visited December 2, 2020).

53.     In 2012 the multidisciplinary peer reviewed scientific journal Maturitas, published the article "Aromatherapy for health care: An overview of systematic reviews."[30]  The article provided "an overview of systematic reviews evaluating the effectiveness of aromatherapy."  The authors evaluated the "methodological quality of all systematic reviews" of "201 potentially relevant publications" of which only 10 met the authors' "inclusion criteria" as most of the scientific studies on aromatherapy and essential oils were "of poor methodological quality."  The researchers evaluated the science behind claims that essential oils could be used to treat "hypertension, depression, anxiety, pain and dementia," and concluded "the evidence is not sufficiently convincing that aromatherapy is an effective therapy for any condition."[31]

54.     Moreover, a September 2019 report prepared by the Evidence Synthesis Program Center for the Department of Veterans Affairs[32] reviewed studies which addressed the effectiveness of aromatherapy with essential oils and determined that there is unclear or insufficient evidence to establish that inhaled essential oils are an effective therapeutic treatment for "anxiety, depressive symptoms, nausea, pain, psychological symptoms in women aged 45+, hypertension" and that the authors had "low confidence" in evidence that essential oils are an effective therapeutic treatment for "sleep and stress."[33]  The authors further note, that "despite their

---

[30] M.S. Lee, J. Choi, P. Posadzki, E. Ernst, Aromatherapy for health care: An overview of systematic reviews, Maturitas. 71 (2012) 257–260.
[31] Id.
[32] M. Freeman, C. Ayers, C. Peterson, D. Kansagara, Aromatherapy and Essential Oils: A Map of the Evidence, Washington, DC: Evidence Synthesis Program, Health Services Research and Development Service, Office of Research and Development, Department of Veterans Affairs. VA ESP Project #05-225; 2019. Available at https://www.hsrd.research.va.gov/publications/esp/aromatherapy.cfm.
[33] Id. p. 5

increasing use, little is known about the benefits and risks associated with the use of [essential oils]".[34]

55.     Other studies available are equally unavailing in support Defendant's claims that the Products are "therapeutic."[35]

56.     Indeed, Defendant knew or should have known when it was guaranteeing that its products were "100% Pure, Therapeutic-Grade" that the scientific evidence does not support its labeling of the Products as therapeutic and that the Products do not provide the numerous health and wellness benefits Defendant advertises.

57.     No reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised therapeutic benefits.

58.     Most consumers are unable to verify that products such as Defendant's are accurately labeled.   Therefore, consumers are particularly vulnerable to these kinds of false and deceptive labeling, marketing, and advertising practices.

59.     Because of Defendant's knowingly deceptive labeling, marketing, and advertising practices, consumers were fraudulently induced to purchase and pay a premium for the Products.

### Plaintiff Relied Upon the Products' Label to Purchase and Use the Products

60.     Plaintiff was herself a victim of Defendant's mislabeling of the Products.

---

[34] *Id.* p. 9

[35] *See e.g.* B. Cooke, E. Ernst, "Aromatherapy: a systemic review" British Journal of General Practice, 2000, 50, 493-496 "Based on a critical assessment of the six studies relating to relaxation, the effects of aromatherapy are probably not strong enough for it to be considered for the treatment of anxiety.  The hypothesis that it is effective for any other indication is not supported by the findings of rigorous clinical trials."

61.     In the last four years, and specifically on or around February 2020, Plaintiff purchased the Products online.  These products included, but were not limited to, frankincense, lavender, peppermint, eucalyptus, cinnamon and orange Young Living essential oils.

62.     Before purchasing the Products, Plaintiff reviewed the labels' claim that they were "therapeutic-grade" and that they would provide a physical, mental, or medicinal benefit if used. Plaintiff purchased the Products believing these claims that they would confer a physical, mental, or medicinal benefit, as stated on the bottle and in Defendant's advertising and promotional materials.

63.     In addition to relying on the guarantee of the oils being "therapeutic-grade", Plaintiff viewed and relied on, *inter alia*, Defendant's claim(s) or claims substantially similar to the following:

- Defendant's frankincense oil "promotes feelings of relaxation & tranquility";

- Defendant's lavender oil "promote[s] feeling of calm and fight[s] occasional nervous tension" and has "balancing properties that calm the mind and body";

- Defendant's peppermint oil "helps to maintain energy levels when applied topically.

64.     "Plaintiff purchased and used the products in the manner Defendant instructed her to, either on the Products label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website.

65.     Plaintiff would not have purchased and used the Products had she known that they did not provide the promised benefits, or at the very least she would not have purchased the Products at the inflated price Young Living charged.

66.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period.  Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Products.  Plaintiff and Class Members would have purchased other oils, if any at all, if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the Products by Defendant.

## **CLASS ACTION ALLEGATIONS**

67.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

68.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained through discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> **National Class:**  All persons within the United States who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:**  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Wisconsin who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[36]

---

[36] The New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, *et seq*., makes unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the State of New York.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged

**New York Sub-Class:**  All persons in New York who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "New York Sub-Class").

69.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

70.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

71.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff but may be ascertained from Defendant's books and records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

---

herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.), Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. §§ 325F.68, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS.  STAT. § 100.18, et seq.).

73. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.  Such common questions of law or fact include, but are not limited to, the following:

      a.     Whether the Products are "therapeutic," as claimed on its label;

      b.     Whether Defendant had a reasonable basis for claiming that Products are "therapeutic";

      c.     Whether the Products confer a healthy or medicinal benefit;

      d.     Whether Defendant knew or should have known that its claims that Products confer a healthy or medicinal benefit was contradicted by scientific studies;

      e.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

      f.     Whether Defendant's actions violate the state consumer fraud statutes invoked herein;

      g.     Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

      h.     Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members; and

      i.     Whether Plaintiff and Class Members are entitled to injunctive relief.

74. Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on behalf of herself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

75. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members

of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

76.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

77.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

78.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as

labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

79.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I
### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

80.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

81.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

82.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the

Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

83.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to the following:

> a.   Representing on their label that the Products are "therapeutic," with no reasonable basis to do so and when, in fact, they are not; and
>
> b.   Representing that the Products confer a physical, health and/or medicinal benefits when, in fact, they do not and/or Young Living had no reasonable basis to believe they did have such benefits.

84.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

85.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

86.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**Count II**
**Violation of the New York GBL § 349**
**(In the Alternative to Count I and on behalf of Plaintiff and the New York Sub-Class)**

87.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

88.     New York General Business Law §349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

89.     The conduct of Defendant alleged herein constitutes recurring "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Sub-class members seek monetary damages and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, marketing, and promoting the Products.

90.     There is no adequate remedy at law.

91.     Defendant misleadingly, inaccurately, and deceptively presented the Products to consumers. Defendant's improper consumer-oriented conduct in advertising the Products by representing on their label that the Products are "therapeutic," with no reasonable basis to do so and when, in fact, they are not; and representing that the Products confer a physical, health and/or medicinal benefits when, in fact, they do not and/or Young Living had no reasonable basis to believe they did have such benefits—is misleading in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become consumers of Young Living when they otherwise would not have.

92.     Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by making false or misleading statements regarding the "therapeutic" nature of the Products and the physical, health and/or medicinal benefits of the Products.

93.     Defendant intended that Plaintiff and each of the other Members of the New York Sub-class would rely upon its unfair, deceptive, fraudulent and/or unconscionable acts or practices

in the conduct of trade or commerce such that a reasonable person would in fact be misled by this deceptive conduct as described above.

94.     Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products are not "therapeutic" and did not have physical, health and/or medicinal benefits.

95.     Information regarding the true efficacy of the Products was known or should have been known to Young Living before it commenced labeling the Products as "therapeutic" and advertising the Products' physical, health and/or medicinal benefits, but was not reasonably known to Plaintiff and members of the New York Sub-class.

96.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

97.     Defendant's misrepresentations and omissions were material to Plaintiff and members of the New York Sub-class who relied or should be presumed to have relied upon those misrepresentations and omissions in purchasing and using the Products.  The reasonable consumer would have expected the Products to meet advertised specifications and would have expected the Products, among other things, to be "therapeutic" and provide physical, health and/or medicinal benefits.  Plaintiff and the New York Sub-class would not have purchased or used the Products had they known the truth about the Products.

98.     Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time and resources to seek out and obtain the Products, paying a premium for the Products after Defendant led them to believe that the Products are "therapeutic" and conferred physical, health and/or medicinal benefits when the Products did not have such benefits.

Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

99.     As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and New York Sub-class members were damaged in an amount to be proven at trial.

100.     Defendant's deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Sub-class have been damaged thereby.

101.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

102.     Plaintiff and New York Sub-class members seek damages, including treble damages, under GBL § 349.

103.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law § 349, and Defendant is liable to Plaintiff and the New York Sub-class members for the damages they have suffered as a result of Young Living's actions. The amount of such damages is to be determined at trial, but not be less than $6,000,000,000.00. GBL § 349(h), which is approximately Young Living's sales during the last six years, if not more.[37]

---

[37]     https://www.heraldextra.com/business/local/young-living-posts-third-billion-dollar-growth-year-techstars-startup-weekend-free-home-maintenance-class/article_cb7bd699-3be2-59c3-ada1-aa062c801648.html#:~:text=Young%20Living%20Essential%20Oils%2C%20the,over%20the%20last%20five%20years. "Young Living Essential Oils, "continues to experience growth as the company announced that its 2017 sales surpassed $1.5 billion. The company has surpassed $1 billion in sales in each of the last three years and its revenues have grown 800 percent over the last five years. The company has experienced a 34 percent increase in 2018 year-to-date."

## Count III
### Violation of the New York GBL § 350
### (In the Alternative to Count I and on behalf of Plaintiff and the New York Sub-Class)

104.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

106.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

107.    Defendant misleadingly, inaccurately, and deceptively marketed and advertised the Products to consumers. Defendant's marketing and advertisements contain untrue and materially misleading statements concerning the Products because, *inter alia*, they mislead and misrepresent the Products as "therapeutic" and conferring physical, health and/or medicinal benefits. Defendant's improper consumer-oriented conduct—including advertising of the Products—is misleading in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become a consumer of the Products when they otherwise would not have.

108.    Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by making false or misleading statements regarding

the efficacy of the Products and not advising consumers that the Products were not "therapeutic" and would not, in reality, confer physical, health and/or medicinal benefits.

109.    Indeed, in a recent proceeding before the NAD, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

110.    Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products are not "therapeutic" and would not provide physical, mental, or medicinal benefits if used. Information regarding the true efficacy of The Products was known to Defendant but was not reasonably known to Plaintiff and members of the New York Sub-class.

111.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

112.    Plaintiff and members of the New York Sub-class relied or should be presumed to have relied upon Defendant's misrepresentations and omissions in purchasing and using the Products. The Plaintiff and the New York Sub-class members would not have purchased or used the Products had they known the truth about the Products.

113.    Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time, money and resources to seek out and obtain the Products, paying, directly or indirectly, in whole or in part, for the Products, and after Defendant lead them to believe that the Products are "therapeutic" and conferred physical, health and/or medicinal benefits. Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

114.    As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and members of the New York Sub-class were damaged in an amount to be proven at trial.

115.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

116.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and marketing willfully, wantonly, and with reckless disregard for the truth.

117.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  All consumers that buy the Products were and continue to be exposed to Defendant's material misrepresentations.

118.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

119.    Plaintiff and New York Sub-class members seek damages, including treble damages, under N.Y. Gen. Bus. Law § 350.

**<u>Count IV</u>**
**Violation Of New York GBL § 350-A(1)**
**On Behalf Of Plaintiff And The Class and/or New York Subclass**

120.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

121.    N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations

made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

122.    Defendant's marketing and advertising contains misleading and/or unfair material omissions concerning the Products.  The marketing and advertising for the Products omit that the Products are not "therapeutic" and do not impart physical, health and/or medicinal benefits.

123.    By its omissions of the facts regarding the Products, Defendant's marketing and advertising of the Products was misleading, inaccurate, and deceptive because, inter alia, it misleads consumers into believing that an individual purchasing the Products would receive "therapeutic" results and physical, health and/or medicinal benefits.

124.    Defendant's improper consumer-oriented conduct was misleading by omission in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become a consumer of the Products when they otherwise would not have.

125.    Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by acts that rendered its marketing and advertising false and misleading, including because Defendant failed to advise consumers that the Products are not "therapeutic" and would not confer physical, health and/or medicinal benefits.

126.    In a recent proceeding before the National Advertising Division (NAD), the advertising industry's robust self-regulatory body which offers a vigorous dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy, Young Living was challenged as to the truthfulness and accuracy of its health-related claims about the Products, particularly that they are "therapeutic."

In that proceeding, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

127.     Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products did not confer the "therapeutic" physical, health and/or medicinal benefits it advertised.

128.     Information regarding the true efficacy of the Products was known to Defendant but was not reasonably known to Plaintiff and members of the New York Sub-class.

129.     Defendant made its omissions regarding the Products' actual efficacy willfully, wantonly, and with reckless disregard for the truth.

130.     Defendant's marketing and advertising of the Products induced the Plaintiff and New York Sub-class members to seek out and use the Products.  Plaintiff and members of the New York Sub-class relied or should be presumed to have relied upon Defendant's misrepresentations and omissions regarding the Products.  Plaintiff and New York Sub-class members would not have purchased or used the Products had they known the truth about the Products.

131.     Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time, money and resources to seek out and obtain the Products, paying, directly or indirectly, in whole or in part, for the Products, after Defendant lead them to believe the Products had "therapeutic" and physical, health and/or medicinal benefits.  Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

132.     As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and members of the New York Sub-class were damaged in an amount to be proven at trial.

133.    Defendant's dissemination of advertising containing material misrepresentations and omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

134.    Defendant's material misrepresentations and omissions of fact, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers of the Products were and continue to be exposed to Defendant's material misrepresentations and omissions.

135.    Plaintiff and New York Sub-class members relied on Defendant's advertising, which was deceptive, false, and contained material misrepresentations and omissions.

136.    Plaintiff and New York Sub-class members seek damages, including treble damages, under GBL § 350-a(1).

137.    As a result of Defendant's false and misleading advertising, the Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**Count V**
**Breach of Express Warranty on Behalf of Plaintiff and the Class**

138.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

139.    Young Living provided the Plaintiff and members of the Class an express warranty of fact, in the form of its labeling, marketing and advertising, affirming and representing that its Products are therapeutic and impart physical and medicinal benefits.

140.    This affirmation of fact was not couched as "belief" or "opinion," and was not a "generalized statement[] of quality not capable of proof or disproof."

141.    This affirmation of fact became part of the basis for the bargain and was material to the transactions of the Plaintiff and of members of the Class.

142.    Plaintiff and members of the Class reasonably relied upon Young Living's affirmation of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to purchase the Products. Within a reasonable time after they knew or should have known of Young Living's breach, Plaintiff—on behalf of herself and the other members of the Class—placed Young Living on notice of its breach, giving Young Living an opportunity to cure its breach, which it refused to do.

143.    Contrary to Young Living's affirmation of fact, Young Living breached the express warranty because its product, in direct contravention to its advertised claims, in fact does not impart a physical, medicinal or health benefit, thereby also breaching the following states' warranty laws, including:

        a.  CAL. COMM. CODE § 2313;

        b.  FLA. STAT. ANN. § 672.313;

        c.  ILL. ST. CH. 810 § 5/2-313;

        d.  MASS. GEN. LAWS ANN. 106 § 2-313;

        e.  MICH. COMP. LAWS ANN. § 440.2313;

        f.  MINN. STAT. ANN. § 336.2-313;

        g.  N.H. REV. STAT. § 382-A:2-313;

        h.  WASH. ANN. 62A.2-313;

        i.  WIS. STAT. ANN. § 402.313.

144.    As a direct and proximate result of Young Living's breaches of express warranty, Plaintiff and the other members of the Class were damaged in amounts to be proven at trial.

**Count VI**
**Breach of Implied Warranty Of Merchantability**
**on Behalf of Plaintiff and The Class**

145.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

146.    Young Living is in the business of manufacturing, producing, distributing, and selling biological products, including the Products..

147.    Under the Uniform Commercial Code's implied warranty of merchantability, Young Living warranted to Plaintiff and the members of the Class that the Products had therapeutic, medicinal and health benefits.

148.    Young Living breached the implied warranty of merchantability in that the Products do not have therapeutic qualities and do not confer medicinal or health benefits and therefore materially deviates from the product description in Young Living's labeling, marketing and advertising of the Products, and reasonable consumers expected the Products to conform with Young Living's representations regarding the Products and would not have purchased the Products if they knew these representations were not accurate.

149.    Young Living breached the implied warranty of merchantability. The Products do not disclose that the Products are not proven to be therapeutic, that the Products do not confer health or medicinal benefits.

150.    Reasonable consumers expecting Products that conform to the representations related to the Products by Young Living would not accept the Products if they knew the truth about its lack of efficacy and that the Products do not confer therapeutic, medicinal or health benefits.

151.    Young Living breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations of fact made on the Product's label and in the Products' marketing, advertising or literature.

152.    Within a reasonable time after the Plaintiff discovered that the Products are not what they purport to be, Plaintiff notified Young Living of such breach.

153.    The inability of the Products to confer the therapeutic, medicinal and health benefits promised by Young Living was wholly due to Young Living's  fault and without Plaintiff's fault or neglect and was solely due to Young Living's  manufacture and distribution of the Products to the public.

154.    At all times relevant to this action, Young Living has breached its implied warranty of merchantability regarding the Products in violation of state implied warranty laws, including:

> a.   CAL. COMM. CODE § 2314;
>
> b.   FLA. STAT. ANN. § 672.314;
>
> c.   ILL. ST. CH. 810 § 5/2-314;
>
> d.   MASS. GEN. LAWS ANN. CH. 106 § 2-314;
>
> e.   MICH. COMP. LAWS ANN. § 440.2314;
>
> f.   MINN. STAT. ANN. § 336.2-314;
>
> g.   R.I. GEN. LAWS ANN. § 6A-2-314;
>
> h.   WASH. REV. CODE ANN. § 62A.2-314;
>
> i.   WIS. STAT. ANN. § 402.314; and

155.    As a result of the foregoing, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

## Count VII
## Breach of Implied Warranty Of Fitness for a Particular Purpose on Behalf of Plaintiff and The Class

156.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

157.    Plaintiff and other members of the Class sought out and used the Products with the specific purpose of benefitting from their therapeutic, medicinal or health benefits.

158.    Young Living knew or had reason to know that Plaintiff and other members of the Class were buying the Products with the specific purpose of obtaining these therapeutic, medicinal and health benefits.  Young Living knew this because it made this promise in its labeling, marketing, advertising and literature to prompt consumers to demand and obtain the Products at a premium price.

159.    Plaintiff and other members of the Class, intending to obtain therapeutic, medicinal and/or health benefits, relied on Young Living to select Products to fit the specific, intended use.

160.    Young Living held itself out as having particular knowledge of the Products values and content.

161.    The reliance by Plaintiff and other members of the Class on Young Living to select Products to fit the particular purpose was reasonable given Young Living's statements and representations in its advertising, marketing and literature.

162.    The reliance by Plaintiff and other members of the Class on Young Living to select Products to fit the particular purpose was reasonable given Young Living's particular knowledge of the product it manufactures and distributes.

163.    At all times relevant to this action, Young Living has breached its implied warranty of fitness for a particular purpose regarding the Products in violation of states' implied warranty laws, including:

      a.   CAL. COM. CODE § 2315

      b.   FLA. STAT. § 672.315

      c.   ILL. ST. CH. 810 § 5/2-315

      d.   MASS. GEN. LAWS ANN. CH. 106 2 § 2-315

      e.   MICH. COMP. LAWS ANN. § 440.2315

      f.   MINN. STAT. § 325G.19

      g.   N.H. REV. STAT. ANN. § 382-A:2-315

      h.   N.Y. U.C.C. LAW § 2-314; 810

      i.   R.I. GEN. LAWS ANN. § 6A-2-315

      j.   WASH. REV. CODE ANN. § 62A.2-315

      k.   WIS. STAT. ANN. § 402.315

164.    As a result of the foregoing, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial.

### Count VIII
### In the *alternative* Unjust Enrichment
### (On Behalf of the National Class and the New York Sub-Class)

165.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

166.    Plaintiff brings this claim against Defendant on behalf of herself and the National Class and New York Sub-Class.

167. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

168. Plaintiff, on behalf of herself and Class members, brings a common law claim for unjust enrichment *in the alternative*.

169. Defendant's conduct violated federal and state consumer protection statutes by advertising, marketing and selling the Products while misrepresenting the Products as "therapeutic" and having physical, health and/or medicinal benefits and omitting material facts.

170. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the Products, which benefited and enriched Defendant at the expense of and to the detriment of Plaintiff and Class members. Defendant has thereby violated the fundamental principles of justice, equity, and good conscience.

171. Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the financial benefits conferred by Plaintiff and the Class members from Defendant's sales of the Products.

172. Plaintiff and Class members seek disgorgement of all profits resulting from its sales of the Products and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A. For Count I: Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff

as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.     For Count II: Declaring that this action is a proper class action, certifying the New York Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

C.     For Count III: Declaring that this action is a proper class action, certifying the New York Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

D.     For Count IV: Declaring that this action is a proper class action, certifying the New York Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

E.     For Count V: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

F.     For Count VI: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

G.      For Count VII: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

H.      For Count VIII: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

I.      Enjoining Defendant from engaging in the unlawful conduct set forth herein;

J.      Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

K.      Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

L.      Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence if such amendment is needed for trial.

Dated: March 30, 2021                                        Respectfully Submitted,

By:  /s/ *Mason A. Barney*
**SIRI & GLIMSTAD LLP**
Aaron Siri
Mason A. Barney
200 Park Avenue, Seventeenth Floor

New York, New York 10166
Tel: (212) 532-1091
E: aaron@sirillp.com
E: mbarney@sirillp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiffs and the Class*