**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LORI MACNAUGHTEN, individually and on behalf of all
others similarly situated,

                                       Plaintiff,

v.

YOUNG LIVING ESSENTIAL OILS, LC,

                                       Defendant.

                                       5:21-cv-00071 (BKS/ML)

_____

**Appearances:**

_For Plaintiff:_
Gary M. Klinger
Mason Lietz & Klinger LLP
227 W. Monroe St., Ste. 2100
Chicago, IL 60606

Gary E. Mason
Mason Lietz & Klinger LLP
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016

Aaron Siri
Mason A. Barney
Siri & Glimstad LLP
200 Park Ave., 17th Fl.
New York, NY 10166

_For Defendant:_
Olivia Arden Adendorff
Jeremy A Fielding
Rachael A. Rezabek
Kirkland & Ellis LLP
1601 Elm St.
Dallas, TX 75201

Alexia Renee Brancato
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Lori MacNaughten[1] brings this proposed class action against Defendant Young Living Essential Oils, LC for Defendant's allegedly "unlawful and deceptive conduct" in the "marketing, sale and delivery" of its line of essential oil products. (Dkt. No. 21, ¶¶ 1–5). Plaintiff asserts claims on behalf of herself and others similarly situated who purchased Young Living essential oil products, alleging: violation of the State Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class (Count I); violation of New York General Business Law ("NYGBL") § 349 in the alternative to Count I and on behalf of Plaintiff and the New York Sub-Class (Count II); violation of NYGBL § 350 in the alternative to Count I and on behalf of Plaintiff and the New York Sub-Class (Count III); violation of NYGBL § 350-A(1) on behalf of Plaintiff and the National Class and/or New York Sub-Class (Count IV); breach of express warranty on behalf of Plaintiff and the National Class (Count V); breach of implied warranty of merchantability on behalf of Plaintiff and the National Class (Count VI); breach of implied warranty of fitness for a particular purpose on behalf of Plaintiff and the National Class (Count VII); and unjust enrichment in the alternative on behalf of the National Class and the New York Sub-Class (Count VIII). (*Id.* ¶¶ 80–172).

Presently before the Court is Defendant's motion to dismiss (Dkt. No. 26) the First Amended Complaint ("FAC") under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil

---

[1] Although Plaintiff's name is spelled "Macnaughten" in the original complaint, (Dkt. No. 1), in the First Amended Complaint ("FAC") it is spelled "MacNaughten," (Dkt. No. 21). The Clerk is respectfully requested to correct the spelling on the docket.

Procedure for failure to state a claim upon which relief can be granted. Plaintiff opposes Defendant's motion. (Dkt. No. 27). The Court held oral argument on December 9, 2021. For the following reasons, Defendant's motion to dismiss is granted.

## II.   FIRST AMENDED COMPLAINT[2]

Young Living manufactures and sells essential oils and blends. (Dkt. No. 21, ¶¶ 11, 18). The company markets its products "through its website and other e-commerce channels," selling the products throughout the United States and on consumer retail websites, but also by recruiting "thousands of independent distributors" who sell the products to customers through a multi-level marketing model. (*Id.* ¶¶ 13–14).

Plaintiff, a citizen of New York residing in Syracuse, purchased Young Living products online sometime "in the last four years, and specifically on or around February 2020." (*Id.* ¶¶ 6, 61). She purchased essential oils "includ[ing], but not limited to," frankincense, lavender, peppermint, eucalyptus, cinnamon, and orange. (*Id.*). She read on the label of the oils that they were "therapeutic-grade" and would provide a "physical, mental, or medicinal benefit," and she believed these claims. (*Id.* ¶ 62). Plaintiff used the Products she purchased "in the manner Defendant instructed her to, either on the Products['] label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website." (*Id.* ¶ 64). Plaintiff also:

> viewed and relied on . . . Defendant's claim(s) or claims substantially similar to the following:
>
> - Defendant's frankincense oil "promotes feelings of relaxation & tranquility";

---

[2] The facts are drawn from the FAC. The Court assumes that all well-pleaded facts are true and draws all reasonable inferences in Plaintiff's favor. *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

- Defendant's lavender oil "promote[s] feeling of calm and fight[s] occasional nervous tension' and has 'balancing properties that calm the mind and body";
- Defendant's peppermint oil "helps to maintain energy levels when applied topically."

(*Id.* ¶ 63).[3] Plaintiff was "misled by Defendant's misrepresentations" and "would not have purchased and used the Products had she known that they did not provide the promised benefits," or she would not have purchased the Products at the price that Young Living charged. (*Id.* ¶¶ 65–66).

### A.     Product Labeling and Marketing

Young Living "prominently labels" each bottle of its essential oil products as "100% Pure, Therapeutic-Grade." (*Id.* ¶ 19). Plaintiff included an image of Young Living Product packaging in the FAC, with each bottle depicted including the "therapeutic-grade" claim.[4] (*Id.*).



The Young Living website also makes specific claims about the "physical, mental, or medicinal" benefits of specific oils and blends. (*Id.* ¶¶ 20–21). The claims include:

- "Dragon Time 'can help promote feelings of stability and calm during occasional times of moodiness'";

---

[3] The FAC contains no allegations regarding any "promised benefits" of the three other essential oils Plaintiff allegedly purchased—eucalyptus, cinnamon, and orange.

[4] The pictured bottles include: Frankincense, Lemon, Peppermint, "Peace & Calming," "PanAway," "Valor," and Oregano. (Dkt. No. 21, ¶¶ 19, 32).

- "Lavender can 'ease your occasional nervous tension'";

- "Bergamot Oil '[m]ay help relieve tension during times of occasional stress'";

- "Sleeplyze 'promotes feelings of relaxation and tranquility for restful sleep . . . and a peaceful send-off to dreamland'";

- "Freedom 'may help with occasional sleeplessness or restlessness'";

- "RC oil []'creates the feeling of normal clear breathing and a refreshing respiratory experience'";

- "Brain Power . . .'promote[s] a sense of clarity and focus when used aromatically'";

- "Davana oil 'boosts your positive outlook on life'";

- "One Heart 'encourages a bright outlook on life'"; and

- "Peppermint 'helps to maintain energy levels when applied topically.'"

(*Id.* ¶ 21). Furthermore, on its website, Young Living instructs its salespeople that when "describing therapeutic-grade oils," they should relay that "every essential oil . . . has the highest naturally-occurring blend of constituents to maximize the desired effect." (*Id.* ¶ 22). A now-removed statement on Young Living's website described the therapeutic-grade "promise" as a "bold statement," but encouraged that "you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work." (*Id.*). This statement, although removed from Young Living's website, has not been removed from its "various blogs and other websites." (*Id.*).

Young Living also maintains "the D. Gary Young Blog," named for its founder. (*Id.*). On May 9, 2019, a Blog re-post titled "Eight Ways to Find Pure, Therapeutic-Grade Essential Oils" stated that:

> Pure, therapeutic-grade essential oils can have therapeutic effects on their users. The purer the oils, the stronger the benefits . . . Peppermint essential oil should contain between 38 and 47 percent menthol to be therapeutic . . .

Look for a guarantee of therapeutic grade, which Young Living provides.

(*Id.*). The blog post then describes how Young Living's "guarantee of therapeutic-grade oils is superior to all other 'therapeutic-grade' promises because Mr. Young 'developed Young Living's very high standards for therapeutic-grade essential oils,'" standards that separate its products from its competitors'. (*Id.* ¶ 23).

### B.    Price

Customers "pay a premium" for Young Living essential oils. (*Id.* ¶ 18). Young Living's products cost more than its competitors': 1) Young Living charges $33.22 for a 15ml bottle of lavender essential oil, while Walmart charges $4.98 for a similar bottle; 2) Young Living charges $103.29 for a 15ml bottle of frankincense essential oil, while Amazon charges $21.50 for a similar bottle; 3) Young Living charges $52.63 for a 5ml bottle of valerian essential oil, while Eden's Garden charges $16.95 for a similar bottle; and 4) Young Living charges $30.26 for peppermint essential oil, while Target charges $6.50 for a similar bottle. (*Id.*). The "therapeutic-grade" guarantee is "one of the major reasons Young Living is able to charge a premium," and yet "no reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised therapeutic benefits." (*Id.* ¶¶ 23, 57).

### C.    False and Misleading Claims

Plaintiff contends that Defendant's representations that its oils are "therapeutic-grade" and have numerous health benefits are "false or misleading or were not substantiated at the time the representations were made." (*Id.* ¶ 38). In 2014, the Food and Drug Administration (FDA) issued a warning letter to Young Living as a result of promoting its essential oils for the treatment of "viral infections (including Ebola), Parkinson's disease, autism, diabetes, hypertension, cancer, insomnia, heart disease, post-traumatic stress disorder (PTSD), dementia, and multiple sclerosis," conditions that are not "amenable to self-diagnosis and treatment by

individuals who are not medical practitioners." (*Id.* ¶ 50). Subsequently, the National Advertising

Division (NAD), which Plaintiff describes as "the advertising industry's robust self-regulatory

body which offers a vigorous dispute resolution process for advertisers and is charged with

independently monitoring and reviewing national advertising for truthfulness and accuracy,"

directed Young Living to permanently discontinue its claim that the oils are "therapeutic." (*Id.* ¶¶

26–27). According to the FAC, "[i]n that proceeding, Young Living failed to provide any

competent and reliable scientific evidence to support its health-related claims about the Products,

including that they are 'therapeutic.'" (*Id.* ¶ 27). Specifically, the NAD found:

> in the absence of specific product testing (or evidence that Young
> Living's essential oils have not only the same ingredient, but that
> such ingredients appear in the products in the same dosage and
> formulation and that the route of administration is the same as the
> underlying tests reasonably permitting extrapolation of results from
> the studies to the claims made) . . . claims its essential oils are
> "therapeutic grade" and confer promised physical and mental
> benefits are unsubstantiated.

(*Id.* ¶ 52). Young Living agreed to discontinue use of its "therapeutic-grade" claim and several

other health-related claims, including that its oils "promote feelings of calm," "help consumers

sleep," "reduce your anxiety," and "provide clarity, focus and/or alertness." (*Id.* ¶ 29). In

November 2020, a panel of the National Advertising Review Board (NARB) affirmed the

NAD's ruling, finding that Young Living "should discontinue 'therapeutic-grade' claims for its

'essential oils'" as these claims are "unsupported." (*Id.* ¶ 31). Nevertheless, "Young Living's

website continues to reference 'therapeutic-grade essential oils,'" "bottles of various Young

Living products deceptively labeled as 'therapeutic-grade essential oils' can still be purchased

through numerous third-party vendors," and Young Living's YouTube channel "repeatedly

shows the [essential oils] with 'therapeutic-grade' on the bottles." (*Id.* ¶ 32).

Plaintiff cites to three studies regarding the health benefits of essential oils.[5] First, the "multidisciplinary peer reviewed scientific journal" Maturitas published an article ("Maturitas Article") in 2012 titled "Aromatherapy for health care: An overview of systematic reviews." (*Id.* ¶ 53). The Maturitas Article defines aromatherapy as "the therapeutic use of essential oil from herbs, flowers, and other plants." (Dkt. No. 26-5, at 2). The authors of this article conducted "electronic searches" for reviews of the effectiveness of aromatherapy. (*Id.* at 2). They begin their article by noting that "the therapeutic effects of aromatherapy are not well supported by clinical studies." (*Id.*). Overall, they found that "[t]he evidence for psychological health and pain relief is encouraging but not convincing," and that overall aromatherapy "may induce relaxation which, in turn, might improve pain and psychological health." (*Id.*). However, whether aromatherapy may treat other conditions "is even less clear." (*Id.*). The authors concluded that "[d]ue to a number of caveats, the evidence is not sufficiently convincing that aromatherapy is an effective therapy for any condition." (*Id.*).

Plaintiff also cites to a September 2019 report by the Evidence Synthesis Program Center for the Department of Veterans Affairs ("DVA Report"). (Dkt. No. 21, ¶ 54). The DVA Report "reviewed studies which addressed the effectiveness of aromatherapy with essential oils" and found "unclear or insufficient evidence to establish that inhaled essential oils are an effective therapeutic treatment for 'anxiety, depressive symptoms, nausea, pain, psychological symptoms in women aged 45+, [and] hypertension,'" and had "low confidence" in the evidence for essential oil use to treat sleep and stress. (*Id.*). The authors found "several areas where [essential oils] are potentially promising for particular populations and/or conditions," but cautioned that

---

[5] The Court has considered these studies which the parties discussed in their briefing and which were attached to Defendant's motion to dismiss because, as discussed *infra*, the Court finds that they were incorporated into the FAC by reference. (Dkt. Nos. 26-5 to 26-7).

they "found insufficient evidence to characterize treatment effects in most of the conditions studied." (Dkt. No 26-7, at 42).

Finally, Plaintiff alleges that "[o]ther studies are equally unavailing in support of Defendant's claims that the products are 'therapeutic,'" citing in a footnote to an article by B. Cooke and E. Ernst titled "Aromatherapy: a systemic review" ("Cooke & Ernst Review") published in the British Journal of General Practice in 2000. (Dkt. No, 21, ¶ 55 n.35). The authors of this study conducted a literature review on aromatherapy to "discover whether any clinical indication may be recommended for its use." (Dkt. No. 26, at 2). Overall, the authors cautioned that the original studies were small and suffered from methodological flaws, but that "[n]evertheless, the results seem to support a belief that aromatherapy massage can be helpful for anxiety reduction for short periods." (*Id.* at 4). Even so, they concluded that "[t]here is no published literature that provides a sound rationale for the use of aromatherapy massage as a medical intervention." (*Id.*) The authors summarized their findings as: "Based on a critical assessment of the six studies relating to relaxation, the effects of aromatherapy are probably not strong enough for it to be considered for the treatment of anxiety. The hypothesis that it is effective for any other indication is not supported by findings or rigorous clinical trials." (*Id.* at 2).

### D.    Proposed Classes

Plaintiff seeks the certification of the following classes:

**National Class:** All persons within the United States who purchased essential oil products labeled as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification . . .

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts. Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Wisconsin who purchased essential oil products labeled

as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification . . .

**New York Sub-Class:** All persons in New York who purchased essential oil products labeled as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification.

(Dkt. No. 21, ¶ 68) (emphases in original).

## III.   DISCUSSION

### A.   Materials Outside the Complaint

Defendant asks the Court to take judicial notice of several documents and websites. (Dkt. No. 26-10). First, it asks the Court to consider the Maturitas Article, the DVA Report, and the Cooke & Ernst Review, which it submitted with its motion to dismiss. (*See* Dkt. Nos. 26-5 to 26-7). Plaintiff referenced each of these articles in her FAC but did not attach them. (Dkt. No. 21, ¶¶ 53–55). Plaintiff discusses each of these articles in her opposition to the motion to dismiss, (Dkt. No. 27, at 13–14), but has not responded to Defendant's request that the Court consider these documents or websites.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby

rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The Court will consider the Maturitas Article, DVA Report, and Cooke & Ernst Review attached to Young Living's motion to dismiss. The FAC describes in detail the content of the Maturitas Article and DVA Report, devoting a paragraph to each study. (Dkt. No. 21, ¶¶ 53–54); *see McLennon v. City of New York*, 171 F. Supp. 3d 69, 88–89 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (internal quotation marks and citation omitted)). Plaintiff's reference to the Cooke & Ernst Review is also "clear, definite, and substantial"; she cites it in support of her claim that "other studies" are "equally unavailing" to support Defendant's "therapeutic" claim and quotes the authors' summary of their findings. (Dkt. No. 21, ¶ 55 n.35). Further, the FAC "relies heavily upon [the] terms and effect" of the studies, "rendering the document[s] integral to the complaint." *Nicosia*, 834 F.3d at 230. Accordingly, the Court considers the three studies.

Second, Young Living asks the Court to take judicial notice of (1) "A true and correct copy of the front product label for Young Living's 'Harmony' essential oil product containing the 'therapeutic grade' statement," (Dkt. 26-3); (2) screenshots of "Young Living's product page for Harmony on its public website," (Dkt. No. 26-4); (3) a "printout of essential oils company Revive's webpage for its Lavender essential oil product," (Dkt. No. 26-8); and (4) a "printout of Wal-Mart's webpage displaying a Homedics lavender essential oil product," (Dkt. No. 26-9).

(Dkt. No. 26-10). As the "Harmony" essential oil product is mentioned nowhere in the FAC, the Court declines to consider the Harmony product label or screenshots. *See Nicosia*, 834 F.3d at 230. Further, the Court declines to take judicial notice of the Revive and Wal-Mart webpages, as there is no evidence that these printouts accurately depict the products at issue from the relevant time period. *See Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 263 n.5 (S.D.N.Y. 2018) ("Courts may take judicial notice of publically [sic] available websites when the authenticity is not in dispute.").

## B.    Standard of Review

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (*quoting Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d at 98)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## C.    NYGBL–Non-Actionable Puffery

Defendant moves to dismiss the FAC on the ground that "the challenged 'therapeutic grade' claim underlying each cause of action constitutes non-actionable puffery." (Dkt. No. 26-1,

at 22–24). Plaintiff responds that Young Living's "therapeutic-grade" claim, when read together with representations on Defendant's website and blog concerning the definition of therapeutic-grade, shows that Defendant's statements are not "mere puffery." (Dkt. No. 27, at 21–22). The Court concludes that Defendant's representations, as alleged in the FAC, amount to no more than puffery and are therefore non-actionable.

Counts II–IV allege violations of NYGBL §§ 349 and 350. (Dkt. No. 21, ¶¶ 87–137). [6] These NYGBL provisions, read together, declare unlawful "deceptive acts or practices in the conduct of any trade, business, or commerce," including false or misleading advertising, which is defined as "advertising, including labeling . . . if such advertising is misleading in a material respect." Claims for violations of NYGBL §§ 349 or 350 are not cognizable when based on advertising statements that are mere "puffery." *See, e.g., Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020). "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). "Statements that are 'expression[s] of opinion,' rather than of fact, have been labeled as 'mere puffing' that cannot form the basis of a fraud claim." *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) (quoting *ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*, 858 N.Y.S.2d 94, 95 (2002)). "To determine whether a statement is puffery, courts can look at a variety of factors, including '(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations.'" *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-cv-1228, 2020 WL 777462, at *8, 2020 U.S. Dist.

---

[6] Although Defendant argues for dismissal of the entire FAC based on puffery, it has only briefed puffery in the context of the consumer statutes. (Dkt. No. 26-1, at 22–24).

LEXIS 26919, at *21 (N.D.N.Y. Feb. 18, 2020) (quoting *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).

"The 'vagueness' factor applies when the disputed statements fail to describe a specific characteristic of the product on which the claims are based." *Avola*, 991 F.Supp.2d at 392. "The 'subjectivity' factor applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or comparison with the product's competitors." *Id.* at 393. *See, e.g.*, *Time Warner Cable, Inc.*, 497 F.3d at 159 (noting that in the false advertising context "[s]ubjective claims about products, which cannot be proven either true or false" are puffery) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (holding that defendant's claim that he conducted "thorough" research was nonactionable puffery)).

Since "context is crucial" in "determining whether a reasonable consumer would have been misled by a particular advertisement," *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019), and Plaintiff challenges Defendant's marketing scheme as a whole, (*see* Dkt. No. 21, ¶¶ 2, 4 (asserting that the "therapeutic grade" claim is false, and that "acts and omissions in connection with the marketing, sale and delivery of the products" violate consumer protection laws)), the Court considers the overall advertising for the oils.[7] This includes advertising statements on Defendant's website regarding the health benefits of specific products, including that frankincense oil "promotes feelings of relaxation & tranquility"; that lavender oil "promotes feelings of calm and fight[s] occasional nervous tension" and has "balancing properties that calm the mind and body"; and that peppermint oil "helps to maintain energy levels when applied topically." (Dkt. No. 21, ¶¶ 21, 63). The Court also considers other marketing representations

---

[7] At oral argument, Plaintiff agreed that the Court should consider the context of Young Living's website, and not merely the label, in analyzing the claim of puffery.

alleged in the FAC, including Defendant's alleged instructions given to marketing staff and statements made in a blog post, (*id.* ¶¶ 22–23). *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999) (considering representations made in "sales presentations" as well as in a videotape instructing the defendant's agents on how speak to clients); *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 183 (E.D.N.Y. 2016) (evaluating whether statements appearing on "Uber's website, either directly or in the form of links to blog posts" are "puffery in the false advertising context") (internal quotation marks omitted).

While mindful that "courts should ordinarily refrain from resolving questions of reasonableness on a motion to dismiss," *George v. Starbucks Corp.*, 857 F. App'x 706–07 (2d Cir. 2021), in this case the Court finds that the language at issue is non-actionable puffery. As alleged in the FAC, the term "100% Pure, Therapeutic-Grade" is on *all* of Defendant's product labels, ranging from peppermint and eucalyptus to orange and frankincense, all of which have different purported health benefits according to claims on Defendant's website. (*See* Dkt. No. 21, ¶¶ 19, 21, 63). The term, as presented on the Products' labels, does not appear to have any "concrete discernable meaning," *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, No. 16-cv-00624, 2016 WL 9584008, at *3, 2016 U.S. Dist. LEXIS 189986, at *9 (C.D. Cal. Aug. 1, 2016) (quoting *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013)); it does not communicate "any specific details about the product," nor is it accompanied by any specific details on the label—other than the type of oil—that would, when viewed together, signal to a consumer that "the product would operate in an objective measurable way." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484, 2015 WL 2344134, at *13, 2015 U.S. Dist. LEXIS 63464, at *31 (E.D.N.Y. May 14, 2015).

In any event, when the Court also considers the overall advertising for the oils, (Dkt. No. 21, ¶¶ 21, 63), including how the oils "*promote[]* feelings of relaxation" or "*help[] to maintain* energy levels," "*can* ease . . . tension," or "*may* help relieve tension," (Dkt. No. 21, ¶ 21), these claims are so vague, non-specific, and subjective that they are non-actionable puffery. *See XYZ Two Way Radio*, 214 F. Supp. 3d at 184 (finding puffery where challenged statements were "couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'—that cannot be proven true or false"); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F.Supp.3d 361, 371 (S.D.N.Y. 2019) ("Statements [by weight loss company] touting '[a] healthier you' and 'push[ing] past plateaus' could plausibly be understood to describe subjective feelings of physical or mental well-being . . . [and] fall comfortably within the category of non-actionable puffery"); *AirHawk*, 2016 WL 9584008, at *4, 2016 U.S. Dist. LEXIS 189986, at *9 (finding that claims that a product "eliminates painful pressure points" and "promotes proper circulation" are "subjective terms whose meaning varies from person-to-person" and non-actionable under the Lanham Act). The advertising describes "intangible, non-measurable benefit[s] akin to puffery." *Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 335 (W.D. Penn. 2020) (finding statements that facial mist has "natural healing powers" and "bring[s] about a natural glow" are puffery). A reasonable consumer could not rely on the vague advertising language that the oils "*can* help promote feelings," "*may* help relieve tension," or "*promote*" assorted feelings. *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (concluding that statements qualified with terms such as "aims to," "wants to," and "should" were not actionable as securities fraud). These are not representations that the oils provide specific benefits. In fact, from the cited language a reasonable consumer could expect that the oils may *not* help promote feelings or may *not* relieve tension. *See, e.g.*, *Stewart v.*

*Ocean State Jobbers, Inc.*, No. 17-cv-1266, 2018 WL 379011, at *3, 2018 U.S. Dist. LEXIS 5716, at *6–7 (D. Conn. Jan. 10, 2018) (finding representation that batteries have "up to 6x longer lasting power" is puffery as a matter of law because the phrase "up to" could lead a reasonable consumer to expect that the power could be less than six times longer); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012) (claim that internet speed was "up to 5x faster" was puffery). With respect to oils for which Plaintiff has not alleged that there were any representations beyond "therapeutic-grade," given the vague and nonspecific representations about how the other oils "*promote[d]*," various "feelings," Plaintiff has not plausibly alleged that a reasonable consumer could be misled by the label "therapeutic-grade" for any of Young Living's oils.

The purported instructions by Defendant's product marketing staff to "its member-sales people" contain similarly vague, subjective representations regarding the efficacy of its essential oils and the benefits they provide:

> When describing therapeutic-grade essential oils to someone else, it's important to relay that ***every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired effect.*** . . . The [Young Living] promise is a bold statement—but you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work.

(Dkt. No. 21, ¶ 22). In a re-post on the D. Gary Young Blog maintained by Young Living, the blog under the guise of "Gary" made the following representation and answered the following question:

> Pure, therapeutic-grade essential oils can have therapeutic effects on their users. The purer the oils, the stronger the benefits . . . . Peppermint essential oil should contain between 38 and 47 percent menthol to be therapeutic . . . . Look for a guarantee of therapeutic grade, which Young Living provides.
> . . .

> [Q]uestion: "If an oil is labeled 'pure, therapeutic-grade,' can I be
> sure that it is?"
>
> [A]nswer[]: "NO! Look for a guarantee of therapeutic-grade which
> Young Living provides."

(*Id.* ¶¶ 22–23) (emphasis omitted).[8] These statements reflect that Defendant may intend "therapeutic-grade" to communicate that its Products "work" and are pure, natural, and of the highest quality, but these representations are couched in boastful, non-specific language, i.e, "maximize the desired effect" and "Young Living truly has the experience to produce essential oils that work," *see Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (finding representations regarding "level of experience or skill" as well as representations that attorneys were "highly qualified," "the right," or the "best" could "only be subjective" puffery); *XYZ Two Way Radio*, 214 F. Supp. 3d at 184 (finding "[t]he overall tone" of website and blog post statements to be puffery as they were "boastful and self-congratulatory"), that ultimately neither promises nor even identifies any specific "therapeutic effects," "benefits" or characteristics. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (explaining that "[p]uffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," "is considered to be offered and understood as an expression of the seller's opinion only," and "is distinguishable from misdescriptions or false representations of specific characteristics of a product") (internal quotation marks and citation omitted).

Finally, viewing the advertising and marketing scheme as a whole, *see, e.g.*, *George*, 2020 WL 6802955, at *2, 2020 U.S. Dist. LEXIS 217016, at *6 (considering the plaintiff's contention "that the whole of Starbuck's brand messaging is more than the sum of its parts"),

---

[8] There is no challenge to the truth of Defendant's representation regarding the purity of Defendant's Products or the truth of its representations regarding the percentage of its constituents.

does not lead to a different conclusion. While Defendant undoubtedly intends to create the impression that its Products "work," its campaign as a whole does not imply any "specific, falsifiable fact" regarding its Products' purported health or medical benefits. *Id.*, 2020 WL 6802955, at *3, 2020 U.S. Dist. LEXIS 217016, at *7. Defendant makes only vague, non-committal representations regarding the health benefits its Products *may* provide—stating, for example, that the Products "[m]ay help relieve tension," "create[] the feeling of normal clear breathing," "promote a sense of clarity and focus," or "help[] to maintain energy levels." (Dkt. No. 21, ¶ 22). Further, the statements on Defendant's website and in its blog posts contain no factual representations whatsoever. Thus, even viewed together, "the challenged statements cannot reasonably be understood as specific representations of objective facts." *XYZ Two Way Radio*, 214 F. Supp. 3d at 184. As non-actionable puffery, the Court concludes that Defendant's statements cannot support a claim under the NYGBL, and Counts II–IV are dismissed. [9]

### D.  Unjust Enrichment–Pleading with Particularity under Fed. R. Civ. P. 9(b)[10]

Defendant argues that the FAC's unjust enrichment claim must be dismissed because it "lack[s] the requisite particularity under the higher pleading standard imposed by [Rule] 9(b)." (Dkt. No. 26-1, at 19–21). Plaintiff responds that as alleged, the unjust enrichment claim "easily meets" Rule 9(b)'s "higher pleading standard." (Dkt. No. 27, at 18). The Court disagrees.

---

[9] Plaintiff's unjust enrichment and warranty claims are based on the same representations the Court found to amount to non-actionable puffery, and are likely subject to dismissal on grounds of non-actionable puffery. *See infra* notes 12, 14. As the parties disagreed at oral argument regarding whether a finding of puffery would require dismissal of Plaintiff's remaining claims and they have not briefed this issue, the Court has, in an excess of caution, addressed whether the FAC otherwise plausibly alleges unjust enrichment and breach of warranty claims.

[10] At this stage, the Court has reviewed only Plaintiff's New York law claims. Because the Court dismisses all of Plaintiff's New York law claims and finds the FAC subject to dismissal, *see Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) ("The unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted."), the Court need not address Defendant's argument that the consumer protection statutes of the twelve other states require pleading with particularity under Rule 9(b).

"By its terms, Rule 9(b) applies to 'all averments of fraud.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting Rule 9(b)). Rule 9(b)'s wording is "cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* (holding that Rule 9(b)'s heightened pleading standard applies to securities fraud claims "insofar as the claims are premised on allegations of fraud" even where "[f]raud is not an element or a requisite to [the] claim"); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud.").[11]

Here, the FAC advances a "common law claim for unjust enrichment," alleging that "Defendant's conduct violated federal and state consumer protections statutes by advertising, marketing and selling the Products while misrepresenting the Products as 'therapeutic' and having physical, health and/or medicinal benefits and omitting material facts," allowing them to "knowingly realize substantial revenues . . . at the expense of and to the detriment of Plaintiff and Class members." (Dkt. No. 21, ¶¶ 169–70). "To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Astor Holdings, Inc. v. Roski*, No. 01-cv-1905, 2002 WL 72936, *17, 2002 U.S. Dist. LEXIS 758, at *54 (S.D.N.Y. Jan. 17, 2002) (citing *Louros v. Cyr*, 175 F. Supp. 2d 497 (S.D.N.Y. 2001)). However, where, as here, an unjust enrichment claim is based on allegations of intentional misrepresentation, courts have generally required the complaint to

---

[11] Although Defendant argues that the entire FAC should be dismissed for failure to allege fraud with particularity, it only argued, and the Court has only considered, the Rule 9(b) pleading standard with respect to the claim for unjust enrichment. (*See* Dkt. No. 26-1, at 20–22).

satisfy Rule 9(b). *See Hughes*, 930 F. Supp. 2d at 471 (applying Rule 9(b) to New York common law unjust enrichment claim where the plaintiffs alleged intentional misrepresentation); *DeBlasio v. Merrill Lynch & Co.*, No. 07-cv-318, 2009 WL 2242605, at *12, 2009 U.S. Dist. LEXIS 64848, at *39 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to unjust enrichment claim based on "allegations of intentional misrepresentations and omissions," explaining that the "quotations from the [complaint] make clear [that] this action is based on averments of fraud"). To satisfy Rule 9(b)'s particularity requirements, a complaint must "(1) specify the statements that the plaintiff contends were [intentional misrepresentations], (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were [misrepresentations]." *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Defendant contends that Plaintiff did not meet this heightened pleading standard because the FAC does not set forth which essential oils Plaintiff purchased, when she purchased the products in the last four years, which website she purchased the products from, what specific statements she saw or relied on, or what "specific benefits she hoped for but did not receive." (Dkt. No. 26-1, at 21–22). Plaintiff responds that she adequately set forth the "who, what, when, and where" required for 9(b) pleading. (Dkt. No. 27, at 19)

Plaintiff alleges in the FAC that she purchased products "includ[ing], but [] not limited to, frankincense, lavender, peppermint, eucalyptus, cinnamon and orange Young Living essential oils" online in the last four years, "and specifically on or around February 2020." (Dkt. No. 21, ¶ 61). Courts have found a range of dates to be sufficient to allege when the statements at issue were made. *See In re Frito-Lay North America, Inc. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512, at *23, 2013 U.S. Dist. LEXIS 123824, at *73 (E.D.N.Y. Aug. 29, 2013) ("*Frito-*

*Lay*") (finding sufficient allegations that plaintiffs purchased products once per month during different periods of time "between January 1, 2010 and the present"); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567–68 (S.D.N.Y. 2017) (finding allegations of "the approximate date of the purchase," including an allegation that a plaintiff purchased a product "during the summer of 2014" sufficient). Plaintiff's allegations that she purchased the products "[i]n the last four years, and specifically on or around February 2020," (Dkt. No. 21, ¶ 61), pleads with sufficient particularity when she purchased the products.

In general, plaintiffs are "not required to plead precisely where they purchased the products." *Frito-Lay*, 2013 WL 4647512, at *23, 2013 U.S. Dist. LEXIS 123824, at *73 (finding sufficient pleadings that did not state where plaintiffs purchased the products). Plaintiff's allegation that she purchased Young Living products "online" is therefore sufficient. (Dkt. No. 21, ¶ 61).

However, the FAC otherwise fails to meet Rule 9(b)'s pleading standards. The FAC does not allege whether Plaintiff received the "physical, mental, or medicinal" effects she expected to receive from Young Living's products. *DiMuro*, 572 F. App'x at 30 ("From the allegations in the complaint we do not know . . . what benefits Plaintiffs hoped for but did not receive"); (*see* Dkt. No. 21, ¶ 62 (alleging only that Plaintiff "purchased the Products believing . . . that they would confer a physical, mental, or medicinal benefit," and that she would not have purchased them "had she known that they did not provide the promised benefits")). Plaintiff's assertion that she "used the products in the manner Defendant instructed her to, either on the Products label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website" is insufficient to plead with particularity that plaintiff "used the product as directed," beyond a conclusory assertion that she did so, without alleging which

directions she followed or specifying what that use was. (Dkt. No. 21, ¶ 64); *DiMuro*, 572 F.

App'x at 31 ("the complaint fails to allege that any of the named Plaintiffs even *used* the product,

let alone used the product as directed").

Further, the FAC references many products sold by Young Living, including Dragon

Time, Lavender, Bergamot, RC oil, Brain Power, One Heart, and Peppermint essential oil

products. (Dkt. No. 21, ¶ 21). The images in the FAC reflect that different products are

categorized as "essential oil[s]," "essential oil blend[s]," or "essential oil supplement[s]." (*Id.* ¶

19). The FAC references numerous therapeutic and health-related claims made by Young Living,

including the "therapeutic-grade" claim on the labels, but also references on the website to health

benefits ranging from relaxation, relief from anxiety, better sleep, clear breathing, focus,

treatment of depression symptoms, reduced stress, and energy. (*Id.* ¶¶ 19, 21). As in *DiMuro*, the

FAC "fails to allege facts explaining how *each product* did not work as advertised and why any

*specific* advertising claim for each product is false," nor does it specify which advertising

statements Plaintiff saw and relied on. 572 F. App'x at 30 (emphasis added); (Dkt. No. 21, ¶¶ 61,

63 (the products Plaintiff purchased "included, but were not limited to, frankincense, lavender,

peppermint, eucalyptus, cinnamon and orange Young Living essential oils," and "[i]n addition to

relying on the guarantee of the oils being 'therapeutic-grade,' Plaintiff viewed and relied on,

*inter alia*, Defendant's claim(s) or claims substantially similar to [claims regarding the health

benefits of frankincense, lavender, and peppermint oil]")). This constitutes what the Second

Circuit referred to as "group-pleading as to the products and the advertisements at issue," and

does not satisfy Rule 9(b)'s particularity requirements. *DiMuro*, 572 F. App'x at 30. Without a

delineation of what specific health or therapeutic benefits are unsubstantiated or lacking, and as

to which products, the FAC is not sufficient to provide Defendant "fair notice of plaintiff's

claim, to enable preparation of [a] defense," as Rule 9(b) requires. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Therefore, Plaintiff's unjust enrichment claim (Count VIII) is dismissed for failure to satisfy Rule 9(b) pleading requirements.[12]

### E.    Breach of Warranty Claims[13]

#### 1.    Notice

Defendant moves to dismiss all of Plaintiff's breach of warranty claims for failure to adequately plead that she gave Defendant pre-suit notice of the breach, as required under New York law. (Dkt. No. 26-1, at 30). Plaintiff responds that "a plaintiff's pleadings may constitute reasonable notice in certain cases." (Dkt. No. 27, at 28–29). "Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty." *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12, 2016 U.S. Dist. LEXIS 14000, at *39 (N.D.N.Y Jan. 12, 2016) (citing N.Y. U.C.C. § 2–607(3)(a)). "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021). A "minority of New York State cases suggest an exception to the notice requirement in retail sales," but that exception "appears to be exclusively

---

[12] It appears that Plaintiff's unjust enrichment claim is also likely subject to dismissal to the extent it is based on puffery. *See, e.g., Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *8 n.11, 2015 U.S. Dist. LEXIS 33809, at *22–23 n.11 (S.D.N.Y. Mar. 16, 2015) (evaluating whether, inter alia, unjust enrichment claim was based on non-actionable puffery). Defendant also argues that Plaintiff's unjust enrichment claim, although plead on the alternative, "must be dismissed as duplicative because it was based on the exact same allegations underpinning her other cases of action." (Dkt. No. 26-1, at 32). Because the Court dismisses this claim under Rule 9(b), it need not reach this argument.

[13] Defendant argues in its opening memorandum that by not including the New York statutory provisions governing Plaintiff's breach of express warranty and implied warranty of merchantability claims (Counts V and VI) on the list of state express and implied warranty laws Defendant purportedly violated, Plaintiff has not asserted these claims under New York law. (Dkt. No. 26-1, at 32–33). This argument is brief and Defendant advances it indirectly, couched in a standing argument. (*Id.* at 32). Moreover, as both parties argued the express and implied warranty claims under New York law, (*see, e.g.*, Dkt. No. 26-1, at 30; Dkt. No. 27, at 28–29; Dkt. No. 31, at 7–8), and Plaintiff asserts these claims on her own behalf, (Dkt. No. 21, at 33, 35), the Court construes the FAC as asserting breach of express and implied warranty claims under New York law.

applied where a party alleges physical, in addition to economic, injury." *Colella*, 348 F. Supp. 3d at 143–44 (collecting cases). However, "the sufficiency and timeliness of the notice is generally a question for the jury." *Patellos v. Hello Products, LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021) (declining to dismiss a breach of warranty claim for failure to give notice when plaintiff plead that he first put defendant on notice by filing and serving his original complaint). The Southern District in *Patellos* explained that there is no "hard and fast rule under which a complaint filed promptly after discovery of an injury could not supply notice," and that in fact, there is case law support for the opposite. 523 F. Supp. 3d at 534 (citing *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014)). "[W]hat is key is not the form of the notice, but its timing—that notice be given promptly after the injury occurs." *Patellos*, 523 F. Supp. 3d at 533.

The Court is not obligated to credit Plaintiff's legal conclusion that she "placed Young Living on notice of its breach" "[w]ithin a reasonable time." (Dkt. No. 21, ¶ 142); *Iqbal*, 556 U.S. at 678. According to the FAC, "[i]n the last four years, and specifically on or around February 2020, Plaintiff purchased the Products online." (Dkt. No. 21, ¶ 61). There are no allegations as to when, in the four years preceding the filing of the March 30, 2021 FAC or the January 20, 2021 original complaint, Plaintiff used the products or discovered they were defective. More importantly, the FAC fails to allege *when* Plaintiff provided such notice. In some cases, courts have found the filing of the complaint to constitute sufficient and timely notice preceding a breach of warranty claim. *See, e.g., Patellos*, 523 F. Supp. 3d at 533 (finding the complaint sufficiently alleged notice where the plaintiff alleged that defendant received "notice of the defect she claimed in its charcoal-based toothpaste products, and thus of its alleged breach of warranty, giving it an opportunity to cure," when the plaintiff filed the class action complaint

seven months after purchase). Here, however, the FAC does not identify which products Plaintiff purchased in February 2020 or in the preceding four years, and the Court therefore has no basis on which to plausibly infer that Plaintiff provided timely notice as to any of Defendant's allegedly defective products, (Dkt. No. 21, ¶ 61; Dkt. No. 1). *See Tomasino*, 44 F. Supp. 3d at 261 (dismissing breach of warranty claims for failure to provide notice, finding that "the two to three years that the plaintiff allowed to pass from 'in or about 2010' until the time of her letter on July 3, 2013, constituted an unreasonable delay," that because the "plaintiff fails to explicitly allege that she used either of the two ANR products she claims to have purchased, it is impossible to know precisely when she discovered the alleged breach," and that the plaintiff failed to allege "any reason why the products' alleged shortcomings would not have been readily discoverable so that she could have provided notice of the alleged breach of warranty without delay").[14] Accordingly, Defendant's motion to dismiss the express and implied warranty claims (Counts V–VII) is granted.

### 2.    Privity

Defendant argues that in addition to failing for lack of notice, Plaintiff's implied warranty claims should be dismissed because she failed to plead privity of contract with Young Living. (Dkt. 26-1, at 30–31). Plaintiff responds that this case fits into several exceptions to the privity

---

[14] In any case, it appears that puffery is non-actionable under New York express warranty law. *See Colangelo*, 2020 WL 777462, at *11, 2020 U.S. Dist. LEXIS 26919, at *30–31 ("To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon . . . However, such an affirmation of fact must be distinguished from puffery, which is not actionable.") (internal quotations and annotations omitted) (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111–12 (2d Cir. 2010), and then quoting *Daley v. McNeil Consumer Prods. Co., a div. of McNeil-PPC*, 164 F. Supp. 2d 367, 376–77 (S.D.N.Y. 2001)). The parties have not briefed whether puffery is actionable under New York implied warranty or unjust enrichment laws, but as each of the warranty and unjust enrichment claims brought under New York law fail on other grounds, the Court need not resolve this question.

requirement, and that a "determination as to whether privity exists is often 'not appropriate at the motion-to-dismiss stage.'" (Dkt. No. 27, at 29).

Under New York law, "[w]hen plaintiffs allegedly suffer only financial, as opposed to personal, injuries, privity of contract between the plaintiffs and the defendant is a necessary element of the breach of implied warranty claims." *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *8, 2020 U.S. Dist. LEXIS 25594, at *22–23 (E.D.N.Y. Feb. 13, 2020) (citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015)). Plaintiff only claims financial injury, and thus this rule applies. (*See* Dkt. No. 21, ¶ 65). Further, as Plaintiff alleges only that she bought Defendant's products "online," and not whether she bought them on Young Living's website or through a third-party vendor, she has not plausibly alleged privity of contract. (*Id.* ¶¶ 13 ("The Products are sold throughout the United States and on consumer retail websites"), 61); *see Colpitts v. Blue Diamond Growers*, No. 20-cv-2487, 2021 WL 981455, at *18, 2021 U.S. Dist. LEXIS 49183, at *46 (S.D.N.Y. Mar. 16, 2021) (dismissing breach of implied warranty claim where the plaintiff pled that "the Product is available to consumers from retail and online stores of third-parties" and Plaintiff's counsel "confirmed that Plaintiff did not buy the Product directly from the defendant," because "lack of an immediate transaction" renders a plaintiff a "remote purchaser") (internal quotations and annotations omitted) (citing *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (3d Dep't 2008)).

Plaintiff responds that the exception to privity for "direct dealing . . . where, as here, the defendant directly markets its products to consumers and the plaintiff relies on written labels or advertisements of a manufacturer." (Dkt. No. 27, at 29) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); and then citing *In re Rust-Oleum Restore Mktg.,*

*Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016); and then

citing *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 740 (W.D. Ky. 2013)). She also asserts

an exception for products "sold in a sealed container and ultimately absorbed by the consumer."

(Dkt. No. 27, at 29). However, she cites only out-of-circuit case law for these assertions. And, as

Defendant points out, (Dkt. No. 31, at 9), in-circuit cases have dismissed pleadings in similar

circumstances, rejecting claims of an exception. *See, e.g.*, *Cosgrove v. Oregon Chai, Inc.*, 520 F.

Supp. 3d 562, 586 (S.D.N.Y. 2021) (dismissing breach of implied warranty claim for tea

products plaintiff did not purchase directly from defendant); *Weisblum*, 88 F. Supp. 3d at 296

(not recognizing a "sealed food products or medicines" exception because the cited case law was

displaced by the UCC); *Tomasino*, 44 F. Supp. 3d at 262 (dismissing breach of implied warranty

claims involving cosmetics products).

  Finally, Plaintiff argues that "[p]rivity is . . . not required under the third-party

beneficiary exception where a manufacturer is aware of the remote customer's requirements and

the manufacturer purports to deliver a product to meet those requirements through a dealer."

(Dkt. No. 27, at 30). However, under New York law:

> [P]laintiff claiming rights as a third-party beneficiary must
> demonstrate: (1) the existence of a valid and binding contract
> between other parties, (2) that the contract was intended for his
> benefit and (3) that the benefit to him is sufficiently immediate,
> rather than incidental, to indicate the assumption by the contracting
> parties of a duty to compensate him if the benefit is lost.

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014) (internal quotations

omitted). Here, Plaintiff has not alleged the existence of a contract between a supplier and

Defendant intended for her immediate benefit, and thus, does not satisfy the requirements for

such an exception. Plaintiff's breach of implied warranty claims thus merit dismissal for failure

to allege privity of contract.

### F.       Dismissal of the FAC and Leave to Amend

For the reasons discussed above, each of Plaintiff's claims raised under New York Law

(NYGBL §§ 349 and 350, breach of express and implied warranty, and unjust enrichment), are

dismissed. Because no claims under New York law remain, it does not appear that Plaintiff has

Article III standing to pursue her other claims, which arise under the laws of other states, and

thus cannot raise them on behalf of yet unnamed class members. *See Langan v. Johnson &*

*Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018) ("[A]s long as the named plaintiffs have

standing to sue the named defendants, any concern about whether it is proper for a class to

include out-of-state, nonparty class members with claims subject to different state laws is a

question of predominance under Rule 23(b)(3)"). Thus, the Court dismisses the FAC in its

entirety.[15] *See Leonard v. Abbott Labs., Inc.*, No. 10-cv-4676, 2012 WL 764199, at *7, 2012

U.S. Dist. LEXIS 30608, at *18 (E.D.N.Y. Mar. 5, 2012) ("Generally, the dismissal of the named

plaintiffs claims before a motion for class certification has been filed would result in the

dismissal of the complaint") (citing *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76

(E.D.N.Y.2008) ("The unnamed class members are not technically part of the action until the

court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is

no one who has a justiciable claim that may be asserted."), and then citing *Phillips v. Ford Motor*

*Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Strictly speaking, if no motion to certify has been filed

(perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal

of the named plaintiffs' claims should end the case.")).

---

[15] Given this ruling, the Court need not address Defendant's additional arguments that Plaintiff's consumer fraud act claims fail because they are based on "unsubstantiated" advertising claims, (Dkt. No. 26-1, at 15), or that Plaintiff is "attempting to skirt the [Food and Drug Administration ("FDA")]'s exclusive jurisdiction to enforce the [Federal Food, Drug, and Cosmetic Act ("FDCA")]," (*id.* at 25).

Plaintiff has already amended the complaint once, in response to Defendant's first motion to dismiss, and has not sought leave to amend. The Court is not aware of any facts that would support a viable claim. However, since the parties' briefing did not address the impact of a ruling against Plaintiff on the issue of puffery, the Court will permit Plaintiff to file a letter motion seeking permission to amend. Any such motion must be filed with a proposed second amended complaint, and comply with N.D.N.Y. Local Rule 15(a), and must be filed by January 17, 2021. Defendant may respond in a letter brief by January 24, 2021.

## IV.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that the First Amended Complaint (Dkt. No. 21) is **DISMISSED without prejudice;** and it is further

**ORDERED** that Plaintiff may file a letter motion seeking permission to amend, as set forth above, **by January 17, 2022,** and it is further

**ORDERED** that the Clerk is directed to close this case if no letter motion to amend is filed by January 17, 2022.

**IT IS SO ORDERED.**

Dated: <u>December 16, 2021</u>
   Syracuse, New York

Brenda K. Sannes
U.S. District Judge